IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
(AUSTIN DIVISION)

| | | |
|---|---|---|
| ELITE SUB-ZERO REPAIR, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE #: _____ |
| | § | |
| GREAT PLAINS APPLIANCE PARTS, | § | |
| INC.; C & W APPLIANCE SERVICE; | § | |
| SEASONAL COMFORT COMPANY; and | § | |
| ALPHABET, INC., | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff ELITE SUB-ZERO REPAIR files this Complaint complaining of and against

Defendants GREAT PLAINS APPLIANCE PARTS, INC., C & W APPLIANCE SERVICE,

SEASONAL COMFORT COMPANY, and ALPHABET, INC., and for cause of action would

show the following:

### Nature of the Case

1.      This is an antitrust lawsuit involving unlawful price discrimination under the

Robinson-Patman Act and other anticompetitive, monopolistic practices by the first three named

Defendants herein.  The geographic market in issue is the State of Texas and the product market

is "out of warranty" repairs on high end Sub-Zero refrigeration products.  Claims are also made

pursuant to the Texas common law.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over the federal antitrust claims pursuant

to 28 U.S.C. § 1331 and § 1337.  The Court has supplemental jurisdiction over the Texas common

law claims under 28 U.S.C. § 1367.  Venue is appropriate because Defendant C & W's home

headquarters is located in San Marcos, Texas, which is within this District and because all

Defendants may be found in and/or transact business in this District.  15 U.S.C. § 22.  Venue in this District would also be permissible under 28 U.S.C. § 1391.

## Parties

3.      Plaintiff ELITE Sub-Zero Repair [hereinafter "ELITE"] is a Houston based, family-owned company that specializes in the "out of warranty" repair of Sub-Zero refrigeration appliances.  It has been successfully engaged in this line of commerce for the past five years and has had absolutely no negative reviews on the Internet from any *actual* customer.

4.      Defendant GREAT PLAINS APPLIANCE PARTS, INC. [hereinafter "GREAT PLAINS"] is the common name for a company which is headquartered at 2859 Dairy Milk Lane, Dallas, Texas 75229.  Its website, www.greatplainsapplianceparts.com indicates that it is a one of "nine hand-selected premier parts distributors located across the US and Canada" and further adds that it is a "dedicated Premier partner of Sub-Zero and Wolf."  GREAT PLAINS is apparently owned by American Appliance Group, Inc. which holds the registered trademark for the Company name.  Service may be perfected by serving its Registered Agent, Ernie V. Strickler, at 2859 Dairy Milk Lane, Dallas, Dallas County, Texas 75229.

5.      Defendant, C & W APPLIANCE SERVICE [hereinafter "C & W"] is one of two of Sub-Zero "authorized" repair companies in Texas.  C & W's headquarters are at 2061 Clovis R. Barker Road, Bldg. 11A, San Marcos, Texas 78666.  Service may be perfected by serving its Registered Agent, Wayne M. Thompson, at 9860 Monroe Drive, Dallas, Dallas County, Texas 75220.

6.      Defendant SEASONAL COMFORT COMPANY [hereinafter "SEASONAL COMFORT"] is the other Sub-Zero "factory certified" repair company in Texas.  SEASONAL COMFORT is located at 248 Garrottsville Street, Houston, Texas 77022.  Service may be

perfected by serving its Registered Agent, Julius A. Maki, at 248 Garrottsville Street, Houston, Harris County, Texas 77022.

7.     Defendant ALPHABET, INC. [hereinafter "ALPHABET"] is the parent company of "Google" -- more accurately depicted as **Google** – which is an Internet services provider and a well-known household word in America.  Indeed, the word "Google" has become both a noun and a verb.  The top banner on its homepage, www.about.google.com touts its mission statement as follows:  "Our mission is to organize the world's information and make it universally accessible and useful."  It is named as a defendant in this case solely to obtain appropriate declaratory and injunctive relief that will avoid unlawful restraints of trade and unfair competition.  ALPHABET headquarters are located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Service may be perfected by serving its Registered Agent, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, Sacramento County, California 95833.

## Facts

To satisfy its *Twiqbal* "plausibility" pleading burden, ELITE alleges the following facts:

### Sub-Zero Appliances – Markets and Monopolies

8.     Sub-Zero is a Wisconsin based American company that was started in 1945 by a man named Westye Bakke.  *See* the Sub-Zero story at www.subzero-wolf.com.  It began by making refrigeration products that would preserve food at "ultra-low temperatures – literally sub-zero."  Sub-Zero manufactures and sells the highest quality home refrigeration products on the American market, if not in the entire world.  As its website touts, "our appliances are designed to last a minimum of 20 years." *Id.*

9.     Because of the high quality, and, of course, the patent and trademark protections that it enjoys, Sub-Zero has a "natural monopoly" with regard to its branded refrigeration products.  Plaintiff does not contest Sub-Zero's market with respect to the retail sale of its refrigeration

products.  However, this case involves efforts by Sub-Zero and the first three named Defendants in this case, to expand that natural monopoly vertically downward into markets that Sub-Zero itself does not serve, i.e., (a) the market for "Original Equipment Manufacturer" ["OEM"] *parts* that are necessary to repair these long lasting machines once they are past the factory warranty period, and (b) the *service* market for "out of warranty" repairs on Sub-Zero appliances.  Sub-Zero's contracts and combinations with the first three named Defendants in this case constitute both "unfair competition" and unreasonable "restraints of trade" if not outright monopolies or attempts to monopolize.

10.     No one would seriously think of repairing Sub-Zero appliances with anything but "OEM" repair parts, at least for those that are functionally important.  By virtue of its contract and combination with Sub-Zero, GREAT PLAINS has a monopoly over the sale and distribution of "OEM" repair parts throughout the State of Texas and beyond.  Although, as its website touts, GREAT PLAINS is one of "nine hand-selected" companies that sell repair parts, on information and belief, Sub-Zero has given it an exclusive right to sell such parts in Texas and prohibits each of the other eight from selling in Texas and prohibits GREAT PLAINS from selling outside of its designated territories.

11.     GREAT PLAINS' monopoly power in the Texas OEM parts market means that it can fix or set prices and other terms of purchase.  As explained below, it has wielded that power in an unlawful, discriminatory, anticompetitive and predatory manner.  On information and belief, ELITE further alleges that Sub-Zero itself also exercises significant direct or indirect control over prices, warranties, and other terms of sale by GREAT PLAINS both to end user customers and to repair service companies, like ELITE, C & W, and SEASONAL COMFORT.

12.     Sub-Zero provides reasonably good warranty protection for consumers who buy and install its refrigeration appliances.  There is a five year, "soup to nuts" warranty covering both

parts and labor, and an additional parts-only warranty on the seal system that extends through years 6-12. Obviously, however, with regard to these highly expensive, "built in" products that are built to last "twenty years", there is a significant market demand for repairs that become necessary during periods that these warranties no longer apply.

13.     Sub-Zero exercises control over this market in a similar fashion to its control over the OEM parts business. Specifically, just as it has done with the "nine hand-picked" distributors of **parts,** Sub-Zero has also entered into contracts with "authorized partners" or "factory trained" or "certified" companies, which provide repair services both for "warranty" repairs and for "out of warranty" repairs.

14.     C & W and SEASONAL COMFORT are the two such "partners" who have been designated by Sub-Zero as the only two companies to provide warranty repair services in the Texas market. On information and belief, it is alleged that each has its own designated "territory" within the State of Texas and that each is prohibited from competing in the other's territory. Although ELITE is not privy to the precise geographical boundaries of each Defendants' territories, as a general rule, SEASONAL COMFORT services the Houston area market and C & W has the Dallas, Fort Worth, Austin, and San Antonio markets.

15.     ELITE does not compete in the "warranty" repair business and, thus, makes no formal complaint about Sub-Zero's arrangements with C & W and SEASONAL COMFORT with regard to business in that market segment. However, ELITE **does** compete stridently for business in the "out of warranty" Sub-Zero repair services market. Because it has been unfairly and unreasonably hindered and harmed with regard to such competition, it has filed this suit seeking redress.

## ELITE's Competition in the "Out of Warranty" Repair Market

16.     ELITE Sub-Zero Repair Company is a sole proprietorship owned and operated by Robin Tate.  The company was formed via her filing of a "d/b/a" notice on or about October 17, 2017.  Robin is very knowledgeable about Sub-Zero products and very active in assessing customers' needs and arranging for repair services to meet those needs.  The repair services themselves are actually done primarily by her husband Mr. Anthony Brown and his two sons, Jamie and Jody.

17.     From the time that ELITE was formed, it has had to buy all of the necessary Sub-Zero OEM repair parts from GREAT PLAINS.

18.     Although from time to time the company has done a few repairs on other brands, by and large the company limits and focuses its attention on doing "out of warranty" repairs on Sub-Zero brand refrigeration products.  As noted above, they are the best made such products in the world, and ELITE is proud to service them.

19.     There is active competition in the "out of warranty" repair market.  However, the lion's share of the Texas business undoubtedly goes to either C & W or SEASONAL COMFORT, and absent action by this Court, there is danger of monopoly power.

20.     Until the events giving rise to this lawsuit, ELITE competed very fairly and very effectively for its fair share of the "out of warranty" repair business.  It does **not** do so by claiming any particular affiliation or relationship with Sub-Zero itself.  Rather, it does so in the old fashioned, venerable American way, i.e., by offering great customer service at reasonable, competitive prices.  Moreover, ELITE offers a five-year warranty on its major repairs, which neither C & W nor SEASONAL COMFORT match, and which none of the other competitors in this market do.

21.     Although it can and will compete on the basis of quality of services and price, ELITE is dependent on two things to be able to compete fairly for its fair share of the out of warranty repair market services.  The first is parts.  You cannot perform Sub-Zero repairs without Sub-Zero OEM parts.  The second is reasonable Internet access to potential customers.  As will be seen, Defendants have interfered with both.

### The Sum of the Parts

22.     Most of the parts that are needed for "out of warranty" repairs have been proprietized and branded by Sub-Zero.  These parts are, by and large, made in America and are sold and shipped in interstate commerce.  As noted above, because of Sub-Zero's vertical integration and territorial restrictions in Texas, any consumer or any repair company in Texas that requires these parts must obtain them from GREAT PLAINS.

23.     GREAT PLAINS has, undoubtedly at the behest and encouragement of Sub-Zero, adopted pricing policies that subsidize the "out of warranty" repair businesses of its chosen "partners" C & W and SEASONAL COMFORT, to the harm and detriment of competition generally and ELITE in particular.  Specifically, on information and belief, ELITE alleges that GREAT PLAINS gives price discounts or concessions in favor of the two "authorized" repair partners, i.e., C & W and SEASONAL COMFORT, that are not available to ELITE or other competitors in this market.  This is, of course, violative of the "price discrimination" provisions of the federal Robinson-Patman Act, quoted in paragraph 44 *infra.*  15 U.S.C.A. § 13.  ELITE seeks to recover actual and treble damages from GREAT PLAINS, C & W, and SEASONAL COMFORT, jointly and severally, for such violations.

24.     GREAT PLAINS, C & W, and SEASONAL COMFORT, in combination with Sub-Zero, also engage in restraints of trade and attempted monopolization via the manner in which they handle the provision of OEM parts for "seal system" repairs that are within the extended warranty

period for same.  As alleged *supra*, Sub-Zero refrigeration products are typically covered by a five-

year warranty from the manufacturer, Sub-Zero.  Parts and labor.  When a customer calls ELITE

with regard to in-warranty repairs of these appliances, ELITE is able to tell from the serial number

whether the machine is still within that warranty period.  If so, ELITE – which does not do warranty

repairs – refers the customer on to either C& W or SEASONAL COMFORT.

25.     In addition to this, however, Sub-Zero also provides a "parts only" warranty during

years 6-12 for parts in the "seal system."  Although Sub-Zero will arrange for the parts to be

supplied to the customer at no charge, the customer is supposed to be able to choose which repair

company it wants to do the repair work.  For example, it can choose ELITE, which has a five- year

warranty on its work; or choose C & W or SEASONAL COMFORT, which have no comparable

warranty.

26.     However, non-preferred repair companies, like ELITE, do not have the ability to

order such warranty parts free of charge from either Sub-Zero or GREAT PLAINS.  Rather, the

*consumer/homeowner* must do so.  ELITE has had many customers upon whom it called, and who

wanted to have it do the repairs.  And yet, in every instance, after calling Sub-Zero to order the

parts, the customer has chosen one of the "authorized" repair companies, i.e., C & W or

SEASONAL COMFORT.  One must wonder why?  On information and belief, it is alleged that

the customers choose not use ELITE for this business because Sub-Zero advises them that it will

only warrant the repair **parts** if the repair **work** is done by one of its two chosen "authorized"

repair companies in Texas.  This anticompetitive verbal condition is, of course, violative of both

the antitrust laws and of the federal Moss Magnuson Warranty Act.  15 U.S.C.A. § 2306.[1]

---

[1] The Moss Magnuson Act permits a warrantor to designate a "representative" to performs its
duties under the warranty, which, in this case would be the provision of parts at no charge, but
does not authorize them to restrict the consumer's choice in who does the actual repair work at the
customer's expense. 15 U.S.C.A. § 2307.

27.     GREAT PLAINS, as distributor and seller of these products, has combined and conspired with Sub-Zero and with C & W and SEASONAL COMFORT, to divert this business away from ELITE and similarly situated repair companies and to the "preferred partners" of Sub-Zero.  This is in "restraint of trade" and also, undoubtedly, constitutes a conspiracy or attempt to monopolize this submarket.

## Poisoning the Internet Well

28.     Separate and apart from the price discrimination issues, ELITE's business has recently been more actively targeted and harmed by anti-competitive activities of both C & W and SEASONAL COMFORT aimed at ELITE's use of the Internet to compete for business.

29.     To be clear, ELITE does not challenge the ability of Sub-Zero to designate repair companies as being "factory trained" or "authorized" or "certified" to work on Sub-Zero products, or the ability of either C & W or SEASONAL COMFORT to tout this alliance in their website and other advertising efforts.     Indeed, both of these Defendants do so.     *See, e.g.*, www.cwcentraltexas.com[2] which is one of C & W's websites; and www.seasonalcomfort.com, which is SEASONAL COMFORT's main website.[3]  Nor does ELITE complain about the fact that the manufacturer Sub-Zero's website, www.subzero-wolf.com has an "Official Service Locator" to find repair services that are "handpicked by Sub-Zero and Wolf" or that it represents that they

---

[2]  On the first page of its website, www.cwservicesinc.com it prominently touts the fact that "[w]e are the only Sub-Zero Premier Partner serving Dallas, Fort Worth, Austin and San Antonio."  On the "Sub-Zero" products subpage it elaborates that "we are . . . one of only two in the entire state of Texas that can offer premier Sub-Zero refrigerator repair."  The "Areas We Serve" tab further makes the point that they are a "certified premier partner for Sub-Zero service central appliance repair."

[3]  The top banner of this website prominently displays the Sub-Zero logo and its opening pitch to potential customers is that it provides "Factory-Certified Service."  Its "About Us" page elaborates with claims that "Our Factory Certified Technicians receive continuous, exclusive training by Sub-Zero, . . ."

are "factory-trained techs." That is "fair" competition. ELITE's complaint centers around "**unfair**" competition.

30.     For the past five years, ELITE has, without making any claim anywhere that its repairmen are "factory trained" or "certified" or "authorized" by Sub-Zero, competed quite fairly and successfully against both C & W and SEASONAL COMFORT. It has done so via several legitimate means that are obviously attractive to customers, including the following: (a) it works, almost exclusively, on Sub-Zero appliances that are "out of warranty"; (b) it has a good idea of the scope of work before its representatives ever arrive at the customer's door. They arrive in an unmarked van that contains all of the OEM parts that are likely to be needed to repair or even rebuild the customer's high end, expensive appliance; (c) it does not charge the customer for diagnostic visits and services; (d) it charges the customers attractive, competitive prices that are —on information and belief – significantly less than the "authorized" repair companies' prices; and, perhaps most importantly, (e) it stands behind its work with a FIVE-YEAR WARRANTY that is unmatched and unparalleled by either C & W or SEASONAL COMFORT.

31.     In the modern world, the Internet is critical to the launch, development and success of companies that engage in appliance repairs, like ELITE, C & W, and SEASONAL COMFORT. Success in Internet marketing depends on two things. First, when a potential customer is searching for a company that has the expertise to repair his high-end Sub-Zero appliance, it is important for the customer to be linked to someone who can actually *service* the repairs in the customer's home. Having a ready presence in Google Maps is essential for that.

32.     Second, most consumers rely on customer *reviews* to vet a company before calling it, and/or certainly before hiring it for the repairs. Sadly, the Internet contains both legitimate reviews from real customers, and false or fake reviews that have been generated and posted for unlawful and anticompetitive purposes.

33.     ELITE's cofounder Anthony Brown has been in the business of doing out of warranty repairs for Sub-Zero appliances for 13 years.  ELITE itself has been operational as such for five years.  During that time, neither Mr. Brown nor ELITE itself has **ever** had a single negative review from any *actual customer*.  Several years ago an anonymous review was posted under the pseudonym "A&W" that was false, misleading, and highly critical of ELITE.  On information and belief, that posting was made at the behest of C & W, or someone acting for it.  However, it was obvious that the person providing the review had not even used ELITE's services, and so ELITE did not make a big deal out of it at that point in time.  But the Internet attacks by both C & W and SEASONAL COMFORT have now escalated and it is time for them to stop!

## Sub-Zero's Own Failed Challenge in the San Antonio Market

35.     ELITE is headquartered in Houston and, for the first few years, "out of warranty" repairs in the Houston market were its principal focus.  However, over the past few years, the company has expanded to service customer needs in Dallas, Fort Worth, Austin and San Antonio.  This is C & W territory.

36.     On or about October 5, 2022, Sub-Zero itself filed an arbitration proceeding with the FORUM Alternative Dispute Resolution entity seeking to have two of ELITE's URL/websites that marketed to consumers in the San Antonio market transferred to Sub-Zero.  Astonishingly, the mere filing of this action froze both websites.  On information and belief, this filing by Sub-Zero was made at the behest and encouragement of C & W in an attempt to monopolize the "out of warranty" repair market in C & W's designated territory.

37.     The alleged basis of Sub-Zero's challenge was the use of the trademark "Sub-Zero" in the website names.  ELITE asserts that this action by Sub-Zero was actionable both as a violation of the *Noerr-Pennington* doctrine and under the rubric of "abuse" of intellectual property rights.

However, rather than fight it via expensive litigation, ELITE chose to simply engage Sub-Zero in the arbitration proceeding.

38.     ELITE also chose, as a matter of tactics and economics, to relinquish one fairly new website that it had acquired from another company that did not use the "ELITE" name, and agreed to the transfer of that URL to Sub-Zero.  But it fought the other transfer request, *inter alia,* on the ground that ELITE's use of the trademark in its website URL was a "fair use" of same under the Lanham Act.  Exhibit A hereto is a Declaration from Anthony Brown, co-founder of ELITE, that was filed with the Arbitration Panel.  It provides background and context for the Court.  It is incorporated by reference herein.

39.     The three highly qualified members of the Arbitration Panel agreed with ELITE.  A true and correct copy of the November 15, 2022, "Decision" of the Panel is attached hereto as Exhibit B and incorporated herein by reference.  As the Court will see, the Panel found that ELITE was entitled under the "nominative fair use" doctrine to utilize the trademark name "Sub-Zero" in its website, that it had specifically disclaimed any formal affiliation with Sub-Zero, that it was not attempting to capitalize on the trademark in a "bait and switch" manner, and, accordingly, that Sub-Zero's request for transfer of the URL  in dispute was denied.[4]  Under the FORUM's rules, Sub-Zero had ten days to challenge the ruling via litigation.  It chose not to do so.  ELITE hoped that this ruling would end the dispute.  Sadly, it was mistaken.

---

[4]  It is perhaps helpful to also note that ELITE also defended the Arbitration by pointing out that Sub-Zero's request was violative of the antitrust laws, which is another defense under the Lanham Act.  The Panel dodged that issue with the following observation:  "The Panel notes that the present proceeding raises complex legal and factual issues that seem ill-suited to resolution through the Policy.  Such proceedings are better resolved in a national court of law which has the benefit of a full range of evidentiary tools such as discovery, witness testimony, and cross-examination."  *Id.*  ELITE had hoped that such proceedings would not be necessary.  But then, as alleged herein, C & W chose another, more furtive way to attack its competitor's Internet marketing.

**Round Two – C & W's Stealth Attack**

40.     Christmas 2022 came and went.  Then, within the space of approximately six minutes on the morning of January 11, 2023, ELITE received five, "anonymous," harassing telephone calls, placed through three different websites focused on the Dallas/Fort Worth market, to ELITE's headquarters.  A log of the calls is attached hereto as Exhibit C and incorporated herein by reference.  Although the caller did not identify himself, all five calls came from C & W. The tenor of the calls tracked the arguments that Sub-Zero itself had made in the Arbitration proceeding and that the Panel had rejected.

41.     By the next day, Google had disabled ELITE's "profile" for the website www.fortworthsubzerorepair.com on Google Maps.  What this means, as a practical matter, is that, even though ELITE does service customers "out of warranty" repair needs in their *homes* in the Dallas/Fort Worth area, a customer doing a Google search for a competent Sub-Zero repair company near his home would not be directed by Google Maps to ELITE.  The customer would lose the best repairman and best warranty; and ELITE would lose the business.

42.     What caused Google to take this action?  On information and belief it is alleged that the action was precipitated by false or misleading anonymous complaints made by C & W or someone at its behest to Google.  C & W is continuing to make these anonymous and misleading attacks.  Indeed, two more occurred on the morning of February 6, 2023.  ELITE has no problem with Google policing its search engine and the Google maps feature via consideration of legitimate complaints from legitimate authorized sources.  However, a homeowner is really not concerned if ELITE has a brick-and-mortar place of business in his/her county, or whether it pays for utilities there.  Instead, it is concerned about having a qualified repairman who will service her Sub-Zero refrigeration appliance in *her kitchen.*

43.     These allegations are made because, unless Google has received legitimate complaints from a legitimate source, Google should restore the "profile" for this site to the Google Maps search engine.  Hopefully, it will do so voluntarily.  If not, then ELITE seeks an injunctive order from this Court requiring it to do so.

**Causes of Action**

The foregoing facts, cumulatively and alternatively, state claims for relief against GREAT PLAINS, C & W, and SEASONAL COMFORT under one or more the following:

44.     FIRST CAUSE OF ACTION -- **FEDERAL ANTITRUST ACT**.  Suit is brought pursuant to 15 U.S.C. § 15 for actual and treble damages, as well as reasonable attorney's fees and appropriate declaratory and injunctive relief, for these Defendants' combinations and conspiracies in restraint of trade, monopolization or attempted monopolization, and price discrimination.  Specifically with regard to price discrimination, ELITE would show that, although the original 1914 Clayton Act focused on predatory pricing practices by "financially powerful corporations" acting as **sellers,** the 1936 Robinson Patman amendments "sought to target the perceived harm to competition occasioned by powerful **buyers**"[5]  Thus, this Act took aim at predatory "price discrimination" by both sellers and buyers with the following language:

> It shall be **unlawful** for any person engaged in commerce, in the course of such commerce, **either directly or indirectly**, to **discriminate in price** between different purchasers of commodities of like grade and quality, where either or **any** of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where **the effect** of such discrimination may be substantially to **lessen competition** or tend to **create a monopoly** in any line of commerce, or to **injure**, destroy, or prevent competition with any person who either grants **or knowingly receives the benefit** of such discrimination, or with customers of either of them:

---

[5] *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.,* 546 U.S. 164, 175 (2006).

15 U.S.C.A. § 13(a) (Emphasis added).

45.     The pricing concessions or discounts which GREAT PLAINS has granted and

which both C & W and SEASONAL COMFORT "knowingly" received from GREAT PLAINS

(perhaps at the "direct or indirect" behest of Sub-Zero) are discriminatory within the meaning

of this statute, and, as subsection (f) makes clear, are "unlawful."   They clearly harm

competition generally and ELITE specifically, and they do "tend to create a monopoly" as well.

Therefore, all three of these Defendants are jointly and severally liable for actual and treble

damages for this violation.   Pursuant to subsection (b) of this statute, the burden of rebutting a

prima facie case of discrimination shall be upon these defendants.

46.     SECOND CAUSE OF ACTION -- **TEXAS ANTITRUST ACT**.  Alternatively,

suit is also brought under the Texas Free Enterprise and Antitrust Act of 1983, as codified in

§ 15.01, *et.seq*. TEX. BUS. & COMM. CODE.  The Texas Act has no analog for the Robinson Patman

price discrimination claim.   However, its prohibitions again a "contract, combination, or

conspiracy in restraint of trade or commerce" and actions to "monopolize, attempt to monopolize,

or conspire to monopolize any part of trade or commerce," *id.* at § 15.05 (West), parallel those of

federal law.   Suit is, accordingly brought, alternatively, under § 15.21.   However, recovery may

not be had under both federal and state statutes.  Therefore, at some point – most likely after verdict

in the case – an election of remedies may be necessary.

47.     THIRD CAUSE OF ACTION -- **BUSINESS DISPARAGEMENT.**  The Texas

law regarding defamation distinguishes between plaintiffs who are individuals and those which

are companies.  ELITE falls into the latter category.  The actions by C & W targeting ELITE's

Internet marketing in its territory, clearly constitute "disparagement."  Specifically, they published

false, derogatory information about ELITE with both malice and lack of privilege.  The publication

was meant to harm ELITE's commercial business and did result in some loss of business, or

"special damages."  ELITE sues to recover its actual damages, and, in accordance with Texas statutory law, at least $200,000 in punitive damages from C & W.  TEX. CIV. PRAC. & REM. CODE § 41.008 (b)(2).

48.      FOURTH CAUSE OF ACTION -- **TORTIOUS INTERFERENCE.**  C & W's efforts to interfere with ELITE's Internet marketing also constitute the tort of interference with prospective business relations.  ELITE seeks to recover both actual and exemplary damages for that tort as well.

**Damages and Other Remedies Sought**

49.      As noted above, the only remedy sought against ALPHABET is the deletion of the slanderous "A&W review" and restoration of ELITE's site to 5-star status, the restoration of the profiles for ELITE's websites on the appropriate Google Maps sites or directories, and declaratory and injunctive relief to keep this from happening again.

50.      With regard to the other Defendants and the federal antitrust theory of liability, ELITE seeks actual damages, statutory treble damages, prejudgment interest, attorney's fees and costs of court, as well as both declaratory and injunctive relief to protect competition and preclude monopolization.

51.      Specifically, with regard to the Robinson-Patman price discrimination theory, ELITE seeks damages in the form of the difference between what it had to pay for parts and the prices that C & W and SEASONAL COMFORT had to pay.  This difference constitutes "the computation of illegal overcharges" within the meaning of 15 U.S.C. § 15d.  The statute of limitations for federal antitrust claims is four years.  15 U.S.C § 15b.  Therefore, ELITE sues to recover as actual damages, the difference in prices as set forth above for period beginning four years before this suit was filed and extended through to the date of Final Judgment.

52.      ELITE also seeks appropriate declaratory and injunctive relief to protect against further violations and further damages in the future.

53.      With regard to the Texas common law claims, ELITE seeks appropriate actual damages as the evidence may establish.  It also seeks an award of exemplary damages which are appropriate under the circumstances.  Such damages are appropriate if the trier of fact finds by clear and convincing evidence that C & W acted with malice or gross negligence.  TEX. CIV. PRAC. & REM. CODE § 41.003.  They are capped at the "greater" of  a multiple of certain actual damages or $200,000.  TEX. CIV. PRAC. & REM. CODE § 41.008.  However, Texas law in the defamation arena also recognizes that prompt publication of a "public apology, correction, or retraction can "mitigate" such damages. TEX. CIV. PRAC. & REM. CODE § 73.003.  Therefore, IF, within 30 days from its receipt of this Complaint, C & W publishes such an apology, correction, retraction, and pledges not to make similar unwarranted anonymous complaints in the future then ELITE will waive any claim for punitive or exemplary damages.  On the other hand, if it refuses or declines to do so, then ELITE will ask the Court and Jury to assess such damages as it deems appropriate, in an amount not less than $200,000.

54.      ELITE also seeks prejudgment interest, costs of suit, including reasonable attorney's fees, and such other and further relief to which it may show itself justly entitled.

### **Jury Demand**

55.      With respect, ELITE hereby invokes its constitutional right to trial by Jury.

WHEREFORE, Plaintiff ELITE SUB-ZERO REPAIR asks that Defendants GREAT PLAINS APPLIANCE PARTS, INC., C & W APPLIANCE SERVICE, SEASONAL COMFORT COMPANY, and ALPHABET, INC. appear and answer herein, and that, following trial or such other proceedings as are appropriate, ELITE recovery judgment for both actual monetary damages and statutory treble damages and/or punitive damages, plus equitable, injunctive, and/or

-18-

declaratory relief, as set forth herein, together with taxable costs, pre-judgment interest and

reasonable costs.

Respectfully submitted,

VICKERY & SHEPHERD, LLP

*/s/ Arnold Anderson Vickery*
Arnold Anderson Vickery
Texas Bar No. 20571800
Earl Landers Vickery
Texas Bar No. 20571900
10000 Memorial Dr., Suite 750
Houston, TX  77024-3485
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: lanny@justiceseekers.com
*Counsel for Plaintiff,*
*ELITE SUB-ZERO REPAIR*